IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ALEXANDER DEJARNETTE,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　／ | No. CR 09-00268 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION AND DISMISSING THE INDICTMENT; STAYING RELEASE OF DEFENDANT UNTIL FEBRUARY 12, 2010 AT NOON** |

On February 5, 2010, the Court heard argument on defendant's motion for reconsideration of the Court's December 22, 2009 order denying defendant's motions to dismiss the indictment. After consideration of the parties' papers and arguments, the Court GRANTS defendant's motion and DISMISSES the indictment. At the February 5, 2010 hearing, the government requested a stay of defendant's release from custody in order to allow the government the opportunity to seek relief from the Ninth Circuit. The Court GRANTS the government's request, and orders as follows: defendant's release from custody is STAYED until noon on February 12, 2010. At that time, unless the Ninth Circuit has issued a stay, defendant shall be released from custody.

**BACKGROUND**

On March 12, 2009, an indictment was filed against defendant charging him with a single charge of violation of the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a) ("SORNA"). The indictment alleges that on or about March 14, 2008, defendant, "an individual required to register under [SORNA], and a sex offender by reason of a conviction under Federal law, did knowingly fail to

register as required by [SORNA]."[1] The predicate sex offender conviction under federal law is defendant's 2001 conviction in *United States v. Dejarnette*, CR 99-351, for violating the Mann Act, 18 U.S.C. § 2421, 2423.

Defendant's 2001 conviction was pursuant to a plea agreement with the government under former Rule 11(e)(1)© of the Federal Rules of Criminal Procedure.[2] Under such plea agreements, the defendant and the United States may agree that a specific sentence is appropriate or stipulate to the applicability or non-applicability of specific provisions of the Sentencing Guidelines. If a Rule 11(e)(1)© agreement is accepted by the Court its terms become binding and the Court must impose the agreed upon sentence. *See United States v. Reyes*, 313 F.3d 1152, 1157 (9th Cir. 2002). Defendant's plea agreement did not require defendant to register as a sex offender, but does contain defendant's acknowledgment that "I am aware that as a consequence of these guilty pleas I may be required to register as a sex offender under applicable federal and/or state law." Plea Agt. (Martikan Decl. Ex. 1, Docket No. 65). Defendant entered a guilty plea on October 13, 2000.

On February 16, 2001, the Court held a sentencing hearing. At the hearing, counsel informed the Court that the plea had been renegotiated to recalculate the sentence from 100 months to 96 months. AUSA Scoble then stated,

> Mr. Scoble: And I, perhaps, should add just in open court: The original written plea agreement, as reflected also in the written addendum now that Your Honor has, makes clear that the defendant acknowledges that he may have to register as a sex offender, although I think it's fair to say at this point that none of us is clear whether he does or doesn't under applicable California law, assuming it's California where he ends up being released, but he acknowledges that it's at least a possibility. And we'll be prepared to deal with that in terms of a proposed special condition of supervised release that I think we're in agreement with now to propose a specific language.

Feb. 16, 2001 Transcript at 4:10-20 (Martikan Decl. Ex. 3). Counsel and the Court then discussed at length precise language for that supervised release condition, including the procedures by which it would be determined whether defendant was required to register as a sex offender and how he would

---

[1] The March 14, 2008 refusal to register as a sex offender under SORNA followed this Court's March 7, 2008 order regarding various alleged supervised release violations by defendant. As discussed *infra*, the March 7, 2008 order stated that the Court would dismiss the charges of failure to register as a sex offender if defendant registered by March 13, 2008. Martikan Decl. Ex. 7. Defendant did not register as a sex offender.

[2] This rule was the precursor to Rule 11(c)(1)(C), which is currently in effect.

2

be notified of such a requirement. *Id.* at 6:13-8:11. Defendant's attorney stated that defendant should not be required to determine whether he was required to register, but that the probation officer and the State should determine if registration was required, and if so, the probation officer should notify defendant of that fact. Mr. Scoble then stated,

> Mr. Scoble: For the court's information, apparently, it's an issue that is not going to be that common henceforth, because there – in this particular case there may be an ex post facto issue with it, but 5.3A(7) under the Guidelines now makes it a mandatory requirement as a condition of supervised release for somebody convicted of certain federal sex offenses, including the Mann Act and the Child-Mann Act, to register, but we're not pressing that here, because there is an issue about whether it might be an ex post facto problem.

*Id.* at 8:14-22.

At the conclusion of the hearing the Court sentenced defendant to 96 months imprisonment with 36 months of supervised release and other terms negotiated by the parties. The Court's Order of Judgment and Commitment dated February 21, 2001 provides, *inter alia*, that "If required by the state to which the defendant is released from custody, and if so directed by the U.S. Probation Officer, the defendant is ordered to report, as directed by the United States Probation Officer, to the local law enforcement authority so that they may determine whether he must register as a sex offender." Martikan Decl. Ex. 4.

Defendant served his term and was released from custody on September 16, 2006. According to defendant, he was not notified prior to his release that he was required to register as a sex offender, although California law required written notification 45 days before his scheduled release. *See* Cal. Penal Code § 290(b)(2) (2006 version). Defendant's then-counsel, Marc Zilversmit, researched California registration requirements and concluded that defendant was not required to register under California law. *See* Sept. 11, 2006 letter from M. Zilversmit to U.S.P.O. (Docket No. 74 in CR 99-351). According to defendant, the entire time he was on supervised release he was never notified directly by State authorities that he was required to register under California law. However, sometime around December 5, 2006, an Assistant Manager at the California Department of Justice Sex Offender Tracking Program sent a letter to U.S. Probation Officer Octavio Magana stating that the Assessment Unit of the Sex Offender Tracking Program had conducted a review of defendant's federal Mann Act conviction and concluded that defendant was required to register as a sex offender because the "DOJ found that

3

out-of-state [federal] offense is equivalent to California Penal Code section 2661(b)." Martikan Decl. Ex. 5.

Based upon this December 5, 2006 letter, the U.S. Probation Officer informed defendant that he was required to register as a sex offender under California law. On January 11, 2007, the probation officer met with defendant and presented him with a form "Notice" from the State of California requiring acknowledgment of a duty to register under state law and directed defendant to sign it. Martikan Decl. Ex. 6. Defendant refused to do so, and took steps to challenge the registration requirement. According to defendant, his attorney Mr. Zilversmit corresponded with the State explaining that the registration requirement was in error, but received no response. Defendant's motion for reconsideration also states that defendant applied for a Temporary Restraining Order to prevent state officials from ordering him to register as a sex offender, which the San Francisco Superior Court granted on January 30, 2007, and that the order was vacated on February 6, 2007. There is nothing in the record or the parties' papers regarding any further state court proceedings regarding the state sex offender registration requirement.

On January 22, 2007, defendant's probation officer submitted a Form 12 alleging that defendant was in violation of his supervised release based on his failure to register as a sex offender as required by state law. Proceedings were delayed because defendant was in state custody. The Court subsequently held hearings and on February 28, 2008, the Court revoked defendant's supervised release. In an order filed March 7, 2008, the Court sentenced defendant for various supervised release violations. With regard to the supervised release charges related to failure to register as a sex offender, the March 7, 2008 order stated that "If defendant fails to register by 3/13/08, he will be found in violation without further notice." Martikan Decl. Ex. 7. Defendant did not register as a sex offender.

On March 17, 2008, the government filed a motion requesting that the Court "impose as a condition of supervised release the requirement that defendant register forthwith as a sex offender, by virtue of his 2001 federal convictions [under the Mann Act]." Docket No. 235 in CR 99-351 SI. Defendant then left the jurisdiction, and on January 1, 2009, the Probation Officer filed another Form 12 alleging multiple violations including, *inter alia*, that defendant had failed to register as a sex offender with the state sex offender registry as directed by the Court's March 7, 2008 order. At a

4

February 6, 2009 hearing, when the prosecutor stated that defendant could be indicted for a failure to register as a sex offender, defendant stated, "Hey, your Honor, in my 11(e)(1)© plea agreement, you said, 'Leave it in the hands of the State,' right?  So if I'm done with this, how could they come back and re-bring it up?"  Feb. 6, 2009 Tr. at 8:12-15 (Martikan Decl. Ex. 8).  By judgment filed February 9, 2009, the Court found defendant guilty of numerous supervised release violations, dismissed the charges related to sex offender registration, and revoked defendant's supervised release.  This prosecution followed.  Defendant has not been prosecuted under California law for failure to register as a sex offender.

**DISCUSSION**

Defendant raises a number of arguments to challenge the current indictment.  First, defendant contends that he cannot be federally prosecuted for failing to register as a sex offender based on his federal conviction because it violates his plea agreement.  Defendant argues that in order to induce him to plead guilty to the Mann Act violations, the United States promised him that he would only have to register as a sex offender "if required by the state to which the defendant is released from custody."  Defendant argues that the intent of the agreement is clear from the colloquy at the February 16, 2001 sentencing hearing, and in particular AUSA Scoble's statement that the United States was not "pressing" for federal sex offender registration.

Defendant argues that the fact that SORNA (which was enacted in 2006 and deemed retroactive by the Attorney General) created a federal registration requirement does not allow the government to renege on its prior commitment that defendant would be required to register as a sex offender only if the State to which he was released required such registration, and that Mr. Scoble's statements at the sentencing amount to a waiver of the federal registration requirement.  Defendant argues that the government should be required to comply with its prior representations, and that if defendant is required to register under California law and refuses to do so, state officials can take whatever enforcement steps they deem necessary, including prosecution in state court.

The government argues that the parol evidence rule prevents AUSA Scoble's comments at the sentencing hearing from modifying the plea agreement, and that the plain language of the plea

5

agreement states that defendant may be required to register as a sex offender under state and/or federal law. The government argues that plea agreements are contractual in nature and are generally subject to principles of contract interpretation. However, while contract law applies to plea bargains, the Ninth Circuit has recognized that because plea bargains implicate Constitutional concerns "[t]he interests at stake and the judicial context in which they are weighed require that something more than contract law be applied." *United States v. Barron*, 172 F.3d 1153, 1158 (9th Cir. 1999). Moreover, there is authority for the proposition that a prosecutor's statements at sentencing can modify a plea agreement. In *United States v. Martin*, 25 F.3d 211 (4th Cir. 1994), a defendant entered into a plea agreement that required the government to inform the district court of the defendant's assistance. *Id.* at 217. In the plea agreement the government retained discretion regarding whether to file a 5K motion or a Rule 35 motion.

> Although the government did not include in the plea agreement a commitment to make a U.S.S.G. § 5K1.1 motion for downward departure at sentencing based on Martin's substantial assistance, the government in its "Position of United States with Respect to Sentencing Factors," (J.A. 19), indicated that it agreed with the PSR's statement that a motion for substantial assistance would be made within the year. At sentencing, the government candidly acknowledged that Martin's assistance, at the time of sentencing, was substantial, having led to the prosecution of two others, and that it intended to make a substantial assistance motion "within the next year." (J.A. 41). The government's commitment to make a substantial assistance motion to reward Martin for his presentence substantial assistance was tantamount to and the equivalent of a modification of the plea agreement, albeit an oral one.

*Id.* In a footnote, the Fourth Circuit noted that "All of our Rule 11 concerns are obviated by the parties' obvious willingness to modify orally the plea agreement and the district court's acceptance of the arrangement. In addition, the special circumstance of a mutually agreed upon modification made in open court in no way undermines our commitment to the general rule that integrated written plea agreements are not open to oral supplementation." *Id.* at 217 n.4.

Here, the Court finds that the parties' discussion about the sex offender registration requirement at the February 16, 2001 hearing supplemented the written plea agreement and became part of the plea agreement. Moreover, after the October 2000 hearing, defendant's Rule 11(e)(1)© plea was renegotiated, and the parties presented the renegotiated plea to the Court at the February 16, 2001 hearing. Until the renegotiated plea agreement had been accepted by the Court, defendant was free to withdraw from the plea agreement. *See United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992).

6

The Court finds that the prosecutor's statements about sex offender registration became part of the plea agreement that defendant entered and that the Court accepted on February 16, 2001.

The question is whether AUSA Scoble's statements at the sentencing hearing can be interpreted as a promise or representation that the government was waiving enforcement of federal sex offender registration, and thus that the government cannot federally prosecute defendant for failing to register as a result of the 2001 Mann Act conviction. Defendant contends that the government has taken inconsistent positions by representing in open court in 2001 that defendant would not be required to register as a sex offender under federal sentencing guidelines, and later taking the position in connection in the current prosecution that defendant is required to register as a sex offender as a matter of federal law.[3] The government contends that there is nothing inconsistent about these positions: "At the initial sentencing, the plea agreement acknowledged the possibility that a federal sex registration requirement might apply to Dejarnette, and the prosecutor stated that he would not press the application of a sentencing guideline mandating registration at sentencing because he thought there might be ex post facto issues with its enforcement. Eight years later, following the passage of SORNA and the Court's [March 6, 2008] order directing Dejarnette to register as a sex offender, the United States prosecuted Dejarnette based on his failure to register in violation of 18 U.S.C. § 2250. The United States' prosecution is not based on the sentencing guideline that the prosecutor referenced in 2001, and the criminal statute that is the basis for this prosecution was not passed until five years after the 2001 sentencing." Opposition at 7:23-8:4. Defendant replies that the government's distinctions are not meaningful because both the sentencing guidelines referenced in 2001 and the current SORNA prosecution contain the same substantive requirements federally mandating registration in the sex offender's state of residence, and thus AUSA Scoble's representation in 2001 that "we're not pressing" the federal registration requirements was tantamount to a promise that defendant would not ever be required to register as a sex offender under federal law based on the Mann Act convictions, and that any sex offender registration was solely a matter of state law.

---

[3] The indictment does not allege that defendant is required to register as a sex offender as a matter of state law, and the government's opposition to defendant's reconsideration motion states that any alleged state law registration requirement is "irrelevant" to this case. Opposition at 6:3.

7

A criminal defendant has a due process right to enforce the terms of a plea agreement. *See Santobello v. New York*, 404 U.S. 257, 262 (1971); *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003). The Court is obligated to enforce the plea agreement consistent with defendant's "reasonable understanding." *United States v. Kamer*, 781 F.2d 1380, 1387 (9th Cir. 1986). To determine the defendant's reasonable understanding and expectations, the Court examines the objective proof in the record, including statements made at sentencing hearings. *Id*.

The Court concludes that, based upon the discussion at the February 16, 2001 hearing, it was defendant's reasonable expectation that if he was required to register as a sex offender, that was a matter of state law, and that he would not be subject to federal sex offender registration requirements based on the 2001 Mann Act convictions. The entire discussion about the possibility of sex offender registration pertained to state law requirements, and AUSA Scoble stated that the government was "not pressing" the federal sex offender registration requirement. To allow the government to proceed with the instant prosecution based on defendant's failure to register as a sex offender as a matter of federal law would be fundamentally unfair. The subsequent enactment of SORNA does not permit the government to rescind the representations made in 2001 that defendant would not be required to register as a sex offender under federal law. *Cf. United States v. Transfiguracion*, 442 F.3d 1222, 1232 (9th Cir. 2006) ("It is the government, not an individual criminal defendant, who is the repeat player in the plea bargaining process. Because all plea agreements are negotiated against the back-drop that the law can change by way of judicial interpretation, the prosecution 'knew or should have known that comparable changes in the law occur from time to time.'") (quoting *United States v. Sandoval-Lopez*, 122 F.3d 797, 801 (9th Cir. 1997)).

Because the Court concludes that the current prosecution violates defendant's 2001 plea agreement, the Court does not reach the other grounds for dismissal advanced by defendant.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for reconsideration and DISMISSES the indictment. The Court GRANTS the government's oral motion for a stay of defendant's release from custody until **February 12, 2010 at noon**, at which time

8

defendant shall be released from custody unless the Ninth Circuit has issued a stay by that time.

**IT IS SO ORDERED.**

Dated: February 6, 2010

SUSAN ILLSTON
United States District Judge